**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. BLOCKQUOTE, INC., | ) |
| | ) |
| Plaintiff-Relator, | ) |
| | ) |
| v. | ) Case No. 3:24-cv-00028-GFVT |
| | ) |
| TOPY AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |

## RELATOR BLOCKQUOTE INC.'S MOTION FOR DETERMINATION OF FIRST TO FILE

Relator Blockquote, Inc. moves this Court for a ruling that it was the first

False Claims Act relator to file a complaint alleging the facts in the covered

conduct in the government's settlement with Topy America, Inc. ("Topy").

The False Claims Act's "first to file" rule, 31 U.S.C. § 3730(b)(5), states that,

"[w]hen a person brings an action under this subsection, no person other than the

Government may intervene or bring a related action based on the facts

underlying the pending action." Relators Blockquote, Inc. and GNGH2 Inc.[1]

dispute who was the "first to file" an FCA action that alleged the covered

---

[1] Blockquote, Inc. consists of a single individual, investigative journalist Lee Fang. Upon information and belief, GNGH2 Inc. also consists of a single individual, lawyer David Abrams, who is also counsel for GNGH2.

conduct. The Government is delaying any relator's share award until this question is resolved.[2]

Defendant Topy has settled allegations that it fraudulently sought and received PPP funds intended for small businesses when, in fact, once employees of foreign affiliates were included in the count, it had too many employees to be eligible (the "foreign affiliation" theory).

In January 2024, Relator GNGH2 filed a complaint alleging that Topy was ineligible for Second Draw PPP funding because its parent company operated factories in China (the "China factories" theory). Exhibit A.

In April 2024, Relator Blockquote filed a complaint alleging the foreign affiliation theory. Doc. 1.

In February 2025, *after* seeing Blockquote's complaint (and at least one other relator's complaint) and *after* learning that a settlement in principle had been reached on the foreign affiliation theory and not the China factories theory, and more than a year after it filed its complaint, GNGH2 amended its complaint to include a foreign affiliation theory (but no actual facts). Exhibit B. GNGH2 now claims, based on relation back to the date of the original complaint, it is entitled to

---

[2] The United States has reserved its rights under the False Claims Act as to whether Relators are entitled to a share of the proceeds. The Government contends that this dispute must be resolved before that question can be addressed.

the relator's share.

Because Blockquote brought an action alleging the facts in the covered conduct more than a year before GNGH2 amended its complaint to include a statement of the theory (but without any supporting facts), the Court should hold that Blockquote's was the first-filed complaint and, therefore, GNGH2 is not entitled to the relator's share.

## I.     HISTORY OF THE TOPY *QUI TAM* CASES

On March 19, 2025, Topy America, Inc. settled allegations that it "was ineligible for its second draw PPP loan because Topy America and its affiliates collectively employed more than 300 employees [and that] Topy America falsely certified in its second draw PPP loan and forgiveness applications that it, together with its affiliates, employed no more than 300 employees." This is referred to in the Settlement Agreement and herein as the "Covered Conduct."

Four different relators filed *qui tam* actions against Topy for PPP fraud. Recognizing that they were not "first to file," two of the relators voluntarily dismissed their lawsuits: *U.S. ex rel. Verity Investigations, LLC v. Topy America, Inc.*, Case No. 3:24-cv-42-GFVT (the "Verity Action"), filed on June 20, 2024; and *U.S. ex rel. Forsyth v. Topy America, Inc.*, Case. No. 3:24-cv-73-GFVT (the "Forsyth Action"), filed on December 11, 2024. Both of these relators, like Blockquote, based their complaints on the foreign affiliation theory.

Two *qui tam* actions remain: the instant "Blockquote Action," filed on April 1, 2024, and *U.S. ex rel. GNGH2, Inc. v. Topy America, Inc.*, Case. No. 3:24-cv-0003-GFVT (the "GNGH2 Action"), filed on January 9, 2024, and amended on February 8, 2025. Relators Blockquote and GNGH2 disagree as to who was first to file and, therefore, potentially entitled to a relator's share.

GNGH2 was first in time to file a *qui tam* against Topy, but it alleged only the China factories theory. It did not allege the foreign affiliation theory or any facts from which the Government could be put on notice of that theory.

Blockquote was the first relator to allege the foreign affiliation theory; it alleged in detail how the affiliation rules applied generally and how the SBA applied them with regards to foreign affiliates (which changed over time) (Doc. 1, ¶¶ 27-33); how Topy's common ownership and management with its ultimate parent company and other subsidiaries established affiliation (*id.*, ¶¶ 7-12, 34-39); and how Topy and its affiliates exceed the 300-employee size standard, including relaying actual employee numbers (*id.*, ¶¶ 40-43).

On January 27, 2025, the Government's attorney emailed Blockquote about the existence of the GNGH2 and Verity cases. On February 3, 2025, the Government's attorney emailed GNGH2, Blockquote, and Verity, attaching copies of their respective complaints, and informed the relators that the Government anticipated intervening within the next month. On February 7, 2025,

the Government's attorney informed Blockquote of its settlement in principle based on the foreign affiliation theory and that it was not intervening on the China factories theory. Later that night, Blockquote emailed GNGH2 about the same.

On February 8, 2025, more than one year after it filed its original complaint but within 24 hours of learning of the settlement based on foreign affiliation, GNGH2 filed its amended complaint to try to include a foreign affiliation theory. Subsequently, GNGH2 has taken the position that it is first-to-file.

## II. APPLICATION OF THE FIRST-TO-FILE RULE

### A. The First to File Rule

The False Claims Act's first-to-file rule provides that "[w]hen a person brings an [FCA action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). "A later-filed complaint that mirrors the essential facts as the pending earlier-filed complaint does nothing to help reduce fraud of which the government is already aware." *United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 36 (1st Cir. 2013). Therefore, "only the first-to-file relator can claim the relator's share of the settlement proceeds for each claim." *United States ex rel. Alt v. Anesthesia Servs. Assocs., PLLC*, 2021 U.S. Dist. LEXIS 136744, *10 (M.D. Tenn. July 22, 2021) (quoting *United States v. Millenium Labs., Inc.*, 923

F.3d 240, 252 (1st Cir. 2019)).

The first-to-file rule has dual purposes: "to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim." *In re Nat. Gas Royalties ex rel. United States v. Exxon Co., USA*, 566 F.3d 956, 961 (10th Cir. 2009).

"The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints." *In re Natural Gas Royalties*, 566 F.3d at 964; *see also United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) ("a court must compare the relator's complaint with the allegedly first-filed complaint"); *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005) ("In deciding whether Walburn's action runs afoul of this bar, we compare his complaint with that in *Brooks*."); *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) ("Similarity is assessed by comparing the complaints side-by-side, and asking whether the later complaint alleges a fraudulent scheme the government already would be equipped to investigate based on [the first] [c]omplaint.")(citation and quotation omitted). It is "an absolute, unambiguous exception-free rule." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017); *see also Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 973 (6th Cir. 2005); *United States ex rel. Kelly v. Novartis*

*Pharms. Corp.*, 827 F.3d 5, 11 (1st Cir. 2016); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1124 (9th Cir. 2015).

The Sixth Circuit applies an "essential facts" test: "If both complaints allege all the essential facts of the underlying fraud, the earlier filed action bars the later action, even if the later complaint incorporates somewhat different details." *Poteet*, 552 F.3d at 516 (cleaned up).

As explained below, when Blockquote filed its complaint, there were no other complaints alleging the essential facts of the underlying fraud. But when GNGH2 filed its amended complaint, there were three pending complaints alleging the essential facts. Accordingly, GNGH2 is barred but Blockquote is not.

## B. GNGH2's Original Complaint Did Not Bar Blockquote's Complaint

In general, courts compare the first-filer's active complaint at the time the second complaint is filed, not subsequent amended complaints. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) ("We judge whether § 3730(b)(5) barred Grynberg's qui tam action by looking at the facts as they existed at the time that action was brought."); *see also United States ex rel. Marshall v. Univ. of TN Med. Ctr. Home Care Servs., LLC*, 2021 U.S. Dist. LEXIS 159167, at *24 (E.D. Tenn. Aug. 23, 2021); *United States ex rel. Cestra v. Cephalon, Inc.*, 2014 U.S. Dist. LEXIS 143745, at *7-8 (E.D. Pa. Oct. 9, 2014) ("The courts that have expressly considered this issue in the context of the first-to-file bar"

examine "the complaints as they existed at the time [the relator] brought his later action."); *United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 601 F. Supp. 3d 536, 547 (N.D. Cal. 2022) (listing cases).

This is consistent with the text of the first-to-file rule, which bars a relator from "bring[ing]" an action if a related action is pending. *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins.*, 782 F. Supp. 2d 248, 259 (E.D. La. 2011) ("[E]ven if 'action' can mean 'claim' in some contexts, it is perfectly natural to read the first-to-file bar… as imposing certain requirements that must be met at the time the suit begins."). "To 'bring an action' is to 'institute legal proceedings'" by filing a lawsuit. *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2nd Cir. 2018); *see also Cho v. Surgery Partners, Inc.*, 30 F.4th 1035, 1040 (11th Cir. 2022); *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017) (listing cases). Thus, it logically follows that an amendment made to Complaint A *after* Complaint B is filed and pending could not retroactively bar Complaint B. *Carter*, 866 F.3d at 207 ("Accordingly, the appropriate reference point for a first-to-file analysis is the set of facts in existence at the time that the FCA action under review is commenced. Facts that may arise after the commencement of a relator's action… do not factor into this analysis.").

Therefore, the first question before the Court is whether GNGH2's original

complaint barred Blockquote's complaint. As the above cases amply demonstrate, it did not. GNGH2 alleged only that Topy's parent company owned subsidiaries with factories in China. It did not allege any facts about who Topy's affiliates were, how many employees Topy and its affiliates employed, or that Topy certified to employing no more than 300 employees. Nor would GNGH2's sparse complaint "equip" the government to investigate these allegations. Thus, Blockquote was not barred from bringing its action.

### C. Blockquote's Complaint Did Bar GNGH2's Amended Complaint

GNGH2 seemingly acknowledges the deficiencies in its original complaint because upon learning of the settlement, it filed an amended complaint more than a year after its original complaint in a belated attempt to fix them. But by the time GNGH2 amended its complaint, it was the *fourth* relator to allege the essential facts.

When faced with a similar scenario, other courts have held that the first-to-file rule applies to amended and supplemental complaints for the same reasons that they do not permit amended or supplemental complaints to "relate back" to the filing of the original complaint, as discussed below.

For example, in situations such as this, where a relator did not allege the relevant facts in the original complaint but added them later, declining to apply the first-to-file rule to the amendment would create an anomaly under which

there would be two pending complaints, each deserving of a relator's share, which is exactly what the first-to-file rule aims to prevent. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (Referring to first-to-file bar: "Exceptions to clearly delineated statutes will be implied only where essential to prevent absurd results or consequences obviously at variance with the policy of the enactment as a whole.") (quoting *United States v. Rutherford*, 442 U.S. 544, 551-52 (1979)). This would create a loophole under which multiple relators could file a complaint with none of the relevant facts and then immediately amend it to include all of the essential facts, dodging any potential first-to-file issue and creating an unlimited number of potential relators with claims to the relator's share. *C.f. Makro Capital of Am., Inc. v. UBS AG*, 2008 U.S. Dist. LEXIS 94046, *12-13 (S.D. Fla. Nov. 18, 2008) (discussed below).

Similarly, the Fourth Circuit recently noted that "every Circuit to address the issue has held that the first-to-file analysis is conducted *claim-by-claim*, with 'courts consider[ing] each claim individually.'" *United States ex rel. Rosales v. North Carolina, L.L.C.*, 128 F.4th 548, 2025 U.S. App. LEXIS 3533, at *9 (4th Cir. 2025) (listing cases, including *Poteet*). *Rosales* was decided in the context of permitting relators to amend and add new claims—i.e., new, unrelated claims and defendants are not necessarily barred just because the original, related claims are barred. *Id.* at *10. The converse thus is also true: just because an

unrelated claim in an earlier-filed complaint is not barred does not mean that claims added by amendment are immune from the first-to-file rule.

Accordingly, the second question before the Court is whether Blockquote's foreign affiliation claim bars GNGH2's foreign affiliation claim. It does. Blockquote's complaint alleges all of the essential facts about the Covered Conduct: it explains the affiliation rules and the SBA's application of them to foreign affiliates (which changed over time) at the time of the Second Draw loan (Doc. 1, ¶¶ 27-33); it identifies common ownership and management from which affiliation would be established with its parent company and other subsidiaries (*id.*, ¶¶ 7-12, 34-39); and it identifies how Topy and its affiliates exceed the size standard, including identifying actual employee numbers (*id.*, ¶¶ 40-43).

### D. GNGH2's Amended Complaint Does Not Relate Back for First-to-File Purposes

GNGH2, however, does not agree that the Court should limit its analysis to the facts as they existed at the time the complaints were filed. Paragraph 20b of GNGH2's amended complaint contends that its "allegations relate back to the original complaint pursuant to F.R.C.P. 15(c)(1)(B)." Doc. 14, GNGH2 Action.

When faced with this question, courts have declined to permit an end-run around the first-to-file rule by permitting amended or supplemental complaints to relate back to the original complaint:

While she is literally correct that the language of § 3730(b)(5) makes

no reference to amendment, it is clearly outside the intent and
purpose of § 3730(b)(5) to permit relation back. Section 3730(b)(5)
sets up an absolute, first-to-file bar. Amendment does not provide a
back door to avoid this exception-free bar.

*United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 14 (D.D.C.

2003); *see also United States ex rel. Bane v. Lincare Holdings, Inc.*, 2008 U.S. Dist.

LEXIS 134506, at *7 (M.D. Fla. Mar. 14, 2008) ("relation back to circumvent the

provisions of § 3730(b)(5) would be contrary to the 'intent and purpose' of the

statute"); *Makro Capital of Am., Inc. v. UBS AG*, 2008 U.S. Dist. LEXIS 94046, *11-

13 (S.D. Fla. Nov. 18, 2008) ("Even if Rule 15 could properly be applied to avoid

the 'government knowledge' bar, and the undersigned is not persuaded that

such is the case, it could not properly be applied to avoid the 'first- filed' bar"….

Allowing relation back would "defeat the entire purpose of the 'first-

filed' provision.").

Some courts have even expressed concerns that permitting relation back

could lead to this very situation, in which a relator without all the essential facts

races to the courthouse to file a broad, empty complaint so that he can later

amend and jump the line:

If *qui tam* relators could file supplemental complaints and relate
them back, those plaintiffs could file barebones complaints, "secure
a place in the 'jurisdictional queue'[3] . . . and thereby trump any

---

[3] At that time, the first-to-file rule was considered to be jurisdictional in most
circuits. The Sixth Circuit does not consider it to be a jurisdictional bar. *United*

meritorious, related actions that were filed in the meantime" by relating their supplemental complaints back.

*United States ex rel. Estate of Robert Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570, 575 (D.R.I. 2017) (quoting *United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 882 (E.D. Va. 2015) (quoting *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 263 (E.D. La. 2011)), *aff'd*, 866 F.3d 199 (4th Cir. 2017)). *Makro* noted that allowing relation back to avoid the first-to-file rule could even enable plaintiffs in non-*qui tam* cases to amend their complaints to add FCA claims." 2008 U.S. Dist. LEXIS 94046, at *13 ("The solution to this problem is to interpret the provision as 'an exception-free, first to file bar.'").

There are other reasons the Court should not permit relation back in this context. First, Rule 15 has no stated application to the False Claims Act's first-to-file rule. "The purpose underlying the 'relation back' doctrine is to permit amendments to pleadings when the limitations period has expired." *Shillman v. United States*, 2000 U.S. App. LEXIS 15800, *16 (6th Cir. June 29, 2000). Notably, the False Claims Act does expressly permit relation back when the Government adds claims. 31 U.S.C. § 3731(c) (mirroring Rule 15(c)(1)(B)). If Congress intended to permit relation back for relators as well, albeit in a different context, it could

---

*States ex rel. Kathleen v. Cmty. Health Sys.*, 24 F.4th 1024, 1036 (6th Cir. 2022). But the point remains the same.

have included this in the statute.

Second, relation back is not consistent with the goals of the first-to-file rule. As noted above, the first-to-file rule serves two related purposes: "to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim." *In re Nat. Gas Royalties*, 566 F.3d at 961. GNGH2's manifest intent is to jump three other relators' claims after it had knowledge of the Covered Conduct. This would pervert the first-to-file rule—which exists to prevent parasitic complaints—to enable GNGH2 to piggyback off the work and claims of Blockquote.

Third, applying Rule 15 to a first-to-file situation would lead to absurd results. The first-to-file rule prohibits a relator from "bringing" an action, which already happened a year ago when there was indisputably no first-to-file issue. It cannot be that relation back can act as a time warp that retroactively bars the filing of Blockquote's complaint, nor that it, as discussed above, creates multiple pending *qui tams* with equal rights to the relator's share.

It is also worth noting that while in this instance, the cases were filed in the same district court and settled and unsealed at the same time, such is not always the case. Oftentimes, FCA cases are filed in different courts, alleging different claims but with some overlapping facts, and they are litigated after the

-14-

Government declines to intervene. Permitting relation back would enable Relator A to lie in wait while Relator B litigates a seemingly different claim, only for Relator A to amend and claim relation back when the time is right.[4] A savvy defendant could even condition settlement with Relator A (or, as *Makro* notes, even a plaintiff with some overlapping facts that is not a *qui tam* relator) amending their complaint to include the claims being litigated in other actions.

This is why courts apply a clear-cut, "exception-free" analysis to the first-to-file rule, and why this Court should do so as well. When Blockquote filed its complaint, there were no related complaints based on its essential facts. When GNGH2 filed its amended complaint, there were three related complaints pending, including Blockquote's. The Court should name Blockquote as the "first-filed" complaint with respect to the Government's settlement with Topy.

### E.  GNGH2's Amended Complaint Does Not Satisfy the Requirements of Rule 15(c)(1)(B)

Even if the Court were willing to consider relation back, the new claim in the amended complaint does not "ar[i]se out of the conduct, transaction, or occurrence set out" in GNGH2's original complaint. Fed. R. Civ. P. 15(c)(1)(B). In

---

[4] For example, a case against a healthcare provider for engaging in a kickback scheme could share some facts with a case alleging that the provider performed services that were not medically necessary. These cases likely would not bar one another. The cases could engage in parallel litigation, only for the kickback case to amend its complaint well into discovery to include allegations that the claims tainted by the kickbacks were not medically necessary.

-15-

the Sixth Circuit, the question for relation back is "whether the original

complaint gave the defendant enough notice of the nature and scope of the

plaintiff's claim that he shouldn't have been surprised by the amplification of the

allegations…" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 516

(6th Cir. 2007). "This standard is usually met 'if there is an identity between the

amendment and the original complaint with regard to the general wrong

suffered and with regard to the general conduct causing such wrong.'" *Durand v.

Hanover Ins. Grp.*, 806 F.3d 367, 375 (6th Cir. 2015) (quoting *Miller v. Am. Heavy

Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000)).

 Although GNGH2's original complaint was based on the same PPP loan as

the amended complaint, there are no commonalities between the China factories

theory and the foreign affiliation theory—an entity could violate either one

without violating the other. Thus, there is no "identity… with regard to the

general conduct causing such wrong."

 Had Topy litigated this case against GNGH2, it understandably would

have been surprised to see this new claim. This is similar to the distinction made

by the Sixth Circuit in *Causey v. Dore*:

> True, the claims both involve the termination of the Lease. But **the
> alleged conduct underlying each claim is different**: Causey's false-
> light claim arises from Dore's statements to the reporter about
> Causey's conduct and the reasons for termination of the Lease;
> Causey's tortious-interference claim arises from Dore's
> intervention in Causey's business relationship with Dore Real Estate,

causing it to terminate the Lease. The differences between Causey's claims suggest that they do not share an "identity . . . with regard to the general wrong suffered and with regard to the general conduct causing such wrong."

2021 U.S. App. LEXIS 37210, at *12 (6th Cir. Dec. 14, 2021) (emphasis added).[5]

Further, "undue delay in filing, lack of notice to the opposing party, [and] bad faith by the moving party" are also "factors which may affect the decision." *Moross Ltd. P'ship v. Eckenstein Capital, Inc.*, 466 F.3d 508, 519 (6th Cir. 2006). In *Moross*, the Sixth Circuit affirmed a dismissal in part on the basis that the plaintiff waited a year-and-a-half after filing its complaint, "as if Plaintiff at the last minute had simply pulled the form out of thin air." *Id.*

GNGH2 similarly waited more than a year to amend its complaint, and only after it became aware of other relators' complaints and only after the Government had informed relators that it was settling on the basis of foreign affiliation.

Insofar as Blockquote is the "opposing party" in this instance, it can represent to the court that it was shocked by GNGH2's amendment. On the eve

---

[5] Another way to look at it, in the context of the FCA, when an FCA case is declined and unsealed, courts generally require relators to file amended complaints under seal if they are not "substantially similar" to the declined case, so as to give the Government the opportunity to investigate the new claims. *See, e.g., United States ex rel. Williams v. Landmark Hosp. of Athens, LLC,* 676 F. Supp. 3d 1323, 1338 (M.D. Ga. 2023). Had there been no other relators and the government declined GNGH2's Chinese factory case, an amendment to include an affiliation theory would have been subject to this requirement.

of settlement, GNGH2 amended a complaint that had been pending for more than a year, pulling the foreign affiliation claim "out of thin air." And it did so for the bad faith purpose of claiming a relator's share to which it was not entitled.

For all of these additional reasons, the Court should not permit GNGH2's amended complaint to relate back to its original complaint.

### F. GNGH2's Amended Complaint Lacks the Requisite Specificity to Bar Blockquote's Complaint

Even if the Court did agree that an amended complaint "relates back" to the initial filing so as to implicate the first-to-file rule, it still must decide whether the amended complaint adequately puts the Government on notice of the fraud. In *Walburn v. Lockheed Martin Corp.*, the Sixth Circuit held that only a complaint that meets the specificity requirements of Rule 9(b) can preempt a later-filed complaint. 431 F.3d 966, 973 (6th Cir. 2005) ("A complaint that fails to provide adequate notice to a defendant can hardly be said to have given the government notice of the essential facts of a fraudulent scheme, and therefore would not enable the government to uncover related frauds"). This rule is in place for exactly the situation presently before the Court: Rule 9(b) "deters would-be relators from making 'overly broad allegations' that fail to adequately alert the government to possible fraud in an effort to preclude future relators from sharing in any bounty eventually recovered." *Id.* (citations omitted).

With its amended allegations, GNGH2 is such a "would-be relator" with "overly broad allegations" that add nothing to the Government's investigation (particularly in this case, where the Government already had a settlement in principle with Topy). Its amendments do little more than recite the Covered Conduct: "Additionally, the the [sic] total employee count of TOPY Industries Ltd. and its subsidiaries and other affiliates was well in excess of 300 at all relevant times." Exhibit B, ¶ 17. *But see United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001) (only "once the government knows the essential facts of a fraudulent scheme" does it have "enough information to discover related frauds").

As an initial matter, GNGH2's hasty amendment does not even correctly capture the claim. TOPY Industries Ltd. (the Japanese parent company) is not the party that received the PPP loan; Topy America Inc. was.

GNGH2 might argue that this is a distinction without a difference, but the affiliation rules and the SBA's application of those rules are more complex than being able to point to a total employee count of an entire corporate group. Because of differing ownership and management, it is not always certain that a company is "affiliated," as that term is narrowly defined by the SBA in the

-19-

context of PPP regulations,[6] with the ultimate parent company and/or other direct and indirect subsidiaries of that company. Moreover, the rules as to when and how foreign affiliates were included changed over time. That GNGH2's allegations were constrained to the parent company show the limits of its knowledge and ability to put the government on notice.

GNGH2 tries to capture the entire foreign scheme in a single conclusory sentence, two if you count the allegation of a false certification. In comparison, Blockquote included approximately 31 substantive paragraphs relating to the foreign affiliation scheme. Doc. 1, ¶¶ 3-4, 7-12, 21-45. The *Verity* relator included approximately 60 substantive paragraphs relating to the foreign affiliation scheme. Verity Action, Doc. 1, ¶¶ 30-89. The *Forsyth* relator included approximately 41 substantive paragraphs relating to the foreign affiliation scheme. Forsyth Action, Doc. 1, ¶¶ 5-15, 36-65. All three complaints explained the foreign affiliation theory, how it applied to Defendant, and why Defendant was not eligible for the Second Draw loans. These were not mere details; these were the material elements that were necessary to put the Government on notice

---

[6] See Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program (April 3, 2020) ("Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both."), available at https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf

of the scheme.

Because GNGH2's amended complaint does not allege all the essential facts of the foreign affiliation scheme, it does not bar Blockquote's complaint.

## III.    CONCLUSION

The first-to-file rule is designed to be an "exception-free" side-by-side comparison of the complaints as they were pending at the time they were filed. If the Court follows Sixth Circuit precedent, the outcome is clear: Blockquote alleged the facts of a foreign affiliation theory, and GNGH2 did not.

This finding meets the purpose of the first-to-file rule, which exists, in part, "to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator." That is exactly the case here: GNGH2 amended its complaint more than a year after its original complaint—after learning of other complaints and a resulting settlement—just to claim entitlement to the relator's share. And even then, its amendment did not adequately plead the essential facts of the fraud.

The Court should hold that Relator Blockquote is the first-to-file the allegations that form the basis of the Government's settlement with Topy and that only it, if anyone, is entitled to a relator's share award. A proposed order is provided herewith, pursuant to LR 7.1(e).

Respectfully submitted,

/s/ Jason Marcus
Jason Marcus (*pro hac vice*)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this pleading was electronically filed this 21st day of March, 2025, with the Clerk of Court using the CM/ECF system and provided to all attorneys of record.

A copy was also provided to counsel for GNGH2 Inc. via First Class Mail at the address below:

David Abrams, Attorney at Law
PO Box 3353 Church Street Station
New York, NY 10008

<u>/s/ Jason Marcus</u>
Jason Marcus